Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER GARDELLA,<br><br>          Plaintiff,<br><br>    v.<br><br>MANHATTANVILLE COLLEGE,<br><br>          Defendant. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

1.      Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, as follows.

## NATURE OF THE CASE

2.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's sex/gender and/or gender identity.  Defendant Manhattanville College also retaliated against Plaintiff because Plaintiff engaged in protected activity.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3).

1

4. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), as it is a judicial district in the State (New York) in which the unlawful employment practices are alleged to have been committed.

## PROCEDURAL PREREQUISITES

5. Plaintiff received a Notice of Right to Sue ("Notice") from the Equal Employment Opportunity Commission with respect to these charges of discrimination.

6. This Action is being commenced within ninety (90) days of receipt of the Notice.

## PARTIES

7. At all times material, Defendant Manhattanville College was an institution of higher learning with a place of business located at 2900 Purchase Street in Purchase, New York 10577.

8. At all times material, Defendant Manhattanville College was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

9. At all times material, Defendant Manhattanville College had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. At all times material, Defendant Manhattanville College was Plaintiff's employer under Title VII.

## MATERIAL FACTS

11. Plaintiff began working for Defendant Manhattanville College in 1983.

12. Although Plaintiff was born biologically male, Plaintiff identifies as trans and goes by Petra rather than Peter.

13. On or about December 3, 2019, Plaintiff met separately with then Provost Louise Feroe and Dean Christine Dehne and came out to each of them as trans.

14. On or about December 3, 2019, Provost Feroe told Plaintiff that students could file a Title IX complaint against Plaintiff if Plaintiff taught class while wearing a dress.

15. Plaintiff was stunned and aghast at this discriminatory comment.

16. Plaintiff wanted to come out as trans more publicly, but Provost Feroe's conduct made Plaintiff fear doing so.

17. Unfortunately, Defendant Manhattanville College's future responses to Plaintiff coming out corroborated Plaintiff's concerns.

18. On or about June 19, 2020, Plaintiff came out to the faculty members of Plaintiff's Division, the Division of Historical, Philosophical, and Political Sciences, at a Zoom meeting.

19. Before this meeting, Plaintiff emailed the attendees, coming out to them as trans.

20. At the Zoom meeting, Plaintiff heard a colleague laugh, saying that Plaintiff's name was listed as Petra on Zoom.

21. At this Zoom someone said Plaintiff should hold a large meeting to come out, to which a number of attendees responded by laughing.

22. Moreover, at least one attendee read portions of Plaintiff's coming out letter—which was also met with laughter.

23. The laughter made Plaintiff feel outraged, isolated, betrayed, and mortified.

24. This was not the reception Plaintiff had been hoping for after taking a leap of faith by coming out as trans to their colleagues.

25. On September 23, 2020, Plaintiff posted an email to the faculty listserv, as well as to some staff and administrators, announcing Plaintiff's transition from male to female and from Peter to Petra.

26. This letter also explained some personal history leading to the choice.

27. On October 7, 2020, Plaintiff attended a "Faculty Assembly" via Zoom.

28. Upon information and belief, the entire faculty attended the Faculty Assembly.

29. At this Faculty Assembly, Plaintiff arranged their Zoom settings so that Plaintiff's name was displayed as Professor Petra Gardella.

30. In addition, Plaintiff wore a black wig.

31. Later the same day, Plaintiff attended the "First Year Program Meeting," at which Plaintiff wore a blonde wig.

32. Approximately fifteen faculty members attended the First Year Program Meeting.

33. Following both meetings, also on October 7, 2020, Plaintiff emailed Plaintiff's colleagues in the First Year Program, asking if any of them had preferences or opinions to offer on which wig Plaintiff should wear.

34. On or about October 9, 2020, then Interim Provost & Vice President of Academic Affairs Christine Dehne emailed Plaintiff.

35. In part, Ms. Dehne wrote:

> [Y]our emails over various faculty lists about your personal fashion choices are inappropriate. These too have been making colleagues uncomfortable. These are topics one might broach with a friend, but unless a colleague has indicated an interest, it is best to assume they are not wanting their work emails to include this sort of solicitation of personal advice.

36. Plaintiff was outraged at being disciplined because Plaintiff's coming out had made some faculty members "uncomfortable."

4

37. Plaintiff objected to these discriminatory comments and discipline the following day, writing by email to Ms. Dehne that, among other things, "it makes me very sad to think that people are . . . offended by my trivial, nervous question about wigs."

38. In this email, Plaintiff further noted that the following day—October 11—was National Coming Out Day.

39. On or about October 27, 2020, Plaintiff attended a meeting focused on diversity, equity, and inclusion, at which Plaintiff identified themselves as trans.

40. While discussing things that had made attendees feel marginalized, Plaintiff briefly mentioned being asked by priests as a youth whether Plaintiff had ever touched themself, and that this was part of their lifelong struggles with sex and gender.

41. On or about October 30, 2020, attended a meeting about how to most sensitively handle situations where people came out as LGBTQ individuals.

42. LGBTQ stands for Lesbian, Gay, Bisexual, Trans or Transgender, and Queer or Questioning.

43. At this meeting, attendees created a comprehensive of list of every negative word they could associate with LGBTQ individuals.

44. These words were then written on Post-Its, stuck to a wall, and read aloud.

45. Plaintiff was outraged.

46. On or around November 20, 2020, Student Affairs Counselor Kahlil Koromantee emailed Plaintiff regarding an upcoming meeting to discuss a proposal by Vice President of Student Affairs Cynthia Long Porter to remove the "T" and "Q" from the LGBTQ, replacing it with LGB in Defendant Manhattanville College's diversity programs and policy statements.

47. As such, changing LGBTQ to LGB would literally exclude trans people—as well as queer or questioning individuals—and evidences an animus towards trans people.

48. Ultimately, the T and Q were not removed, in part because Plaintiff contacted a civil rights activist who, upon information and belief, then intervened with Defendant Manhattanville College's decision makers.

49. Still, the attempt evidences an animus towards trans individuals at Defendant Manhattanville College because efforts were made to exclude trans individuals from the aegis of its diversity programs and policy statements.

50. On or about December 11, 2020, Plaintiff, Associate Director of Human Resources Stephanie Carcano, Professor Gillian Hannum, and Human Resources Director Don Dean met to discuss allegations that Plaintiff had violated Defendant Manhattanville College's Electronic Communications Policy, sexual harassment policy, and professional ethics policy.

51. Director Dean said that Plaintiff's October 7, 2020, email about Plaintiff's wigs violated the Electronic Communications Policy because it was a personal communication.

52. Plaintiff protested that this policy was being selectively enforced against Plaintiff, pointing out that other faculty members had similarly sent emails on numerous occasions with photographs of their children and pets—including then Chair of the Faculty, Nancy Todd.

53. In so doing, Plaintiff objected to this discriminatory selective enforcement.

54. The primary difference between Plaintiff's personal email and other faculty members' personal emails was that Plaintiff had just come out as trans.

55. Plaintiff was also told that some anonymous students had complained about sexually charged subject matter discussed in a class taught by Plaintiff.

6

56. The class is called Sexuality and Religion and Plaintiff had taught it at Manhatanville College approximately every other year since about 1984.

57. The class syllabus for Sexuality and Religion included a trigger warning about this subject matter—something that Defendant Manhattanville College was well aware of in advance because Plaintiff had provided at least one version of the syllabus to their Division Chair, Lisa Rafanelli, in or around 2020.

58. Moreover, Plaintiff sent a copy of the trigger warning in the spring of 2019 to Seann Kalagher, President Michael Geisler, and then-Provost Feroe.

59. On or about December 13, 2020, Plaintiff sent written objections to these verbal allegations to several individuals, including Ms. Carcano, Mr. Dean, Gillian Hannum, and Seann Kalagher.

60. Plaintiff, among other things, refuted the allegations against Plaintiff, complained that Plaintiff was mocked at the June 19 Division meeting, and explained that the disciplinary actions being taken against Plaintiff were discriminatory based on Plaintiff's sex/gender.

61. On or about January 20, 2021, Benefits Manager/Interim Title IX Coordinator Stephanie Carcano sent Plaintiff a letter, which in part stated that "Human Resources has received multiple complaints from students, peers and colleagues at Manhattanville alleging that you have violated the College's Electronic Communications Policy and policies prohibiting sexual harassment."

62. This letter advised Plaintiff that Defendant Manhattanville College was severely disciplining Plaintiff, explaining that:

> The College has decided . . . that the following sanctions will be imposed:

- **Permanent** suspension from all college listservs (including departmental lists), attendance at Faculty Assembly meetings and departmental/division meetings; and

- **Permanent** removal from any and all appointed College and Faculty committees; and

- **Permanent** ban from participating in College community activities.

These sanctions will remain in place for the remainder of your tenure at Manhattanville . . . .

(Emphasis in original.)

63. Plaintiff only received a written description of the charges against them on or about March 4, 2021, and thus did not have a fair opportunity to challenge this hasty and unlawful discipline.

64. Defendant Manhattanville College disciplined Plaintiff for coming out and for complaining of discrimination.

65. Plaintiff was outraged by this discriminatory and retaliatory discipline.

66. In or around March, 2021, Plaintiff filed an Employment Complaint Form with the New York State Division of Human Rights, alleging that Defendant Manhattanville College had discriminated and retaliated against Plaintiff.

67. Upon information and belief, this complaint was cross-filed with the EEOC.

68. On or about April 13, 2021, Plaintiff refuted the charges against them in a filing with the New York State Division of Human Rights.

69. On or about June 8, 2021, a Faculty Review Committee recommended that all bans on Plaintiff be lifted immediately and that a committee be appointed to investigate the allegations against Plaintiff.

70. The Faculty Review Committee concluded that Plaintiff was disciplined without due process.

71. Defendant Manhattanville College's slapdash methods evidence Defendant Manhattanville College's discriminatory and retaliatory motivations.

72. On or about July 2, 2021, President Geisler rejected the Faculty Review Committee's suggestions and reiterated this position on or about September 9, 2021.

73. On or about October 19, 2021, the New York State Division of Human Rights found probable cause to determine that Defendant Manhattanville College unlawfully discriminated against Plaintiff.

74. The New York State Division of Human Rights has yet to hold a hearing in this matter.

75. Because of this harassment, Plaintiff resigned Plaintiff's tenured faculty position effective December 31, 2022—against Plaintiff's will.

76. Plaintiff's working conditions were so intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.

77. For example, Plaintiff was still barred from faculty meetings and community events.

78. Attending faculty meetings was an essential part of Plaintiff's position as a professor.

79. Plaintiff does not know of any other faculty members being barred from attending faculty meetings.

80. Attending community events was also an essential part of Plaintiff's position as a professor.

81. Plaintiff does not know of any other faculty members being barred from community events.

82. Hence banning Plaintiff from faculty meetings and community events prevented Plaintiff from performing essential aspects of Plaintiff's job—and the very nature of this change to the terms and conditions of Plaintiff's employment was an extreme outlier, evidencing the discriminatory and retaliatory animus against Plaintiff.

83. Moreover, by barring Plaintiff from faculty meetings and community events and thus shunning Plaintiff for daring to come out as well as for objecting to discrimination, Defendant Manhattanville College essentially thrust Plaintiff back into the closet, where Defendant Manhattanville College would not need to deal with a troublesome trans individual like Plaintiff.

84. Defendant Manhattanville College also negated Plaintiff's right to express their sex and gender identity while physically present.

85. Further, the disciplinary process and poisoned workplace atmosphere cultivated by many of Plaintiff's colleagues created an intolerably hostile work environment.

86. All of this was an overwhelming betrayal of a member of the Manhattanville College community who had been there since approximately 1983.

87. As such, Defendant Manhattanville College terminated Plaintiff.

88. As such, Defendant Manhattanville College constructively terminated Plaintiff.

89. Plaintiff explained that Defendant Manhattanville College constructively discharged Plaintiff in Plaintiff's letter of resignation.

90. Defendant Manhattanville College knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

91. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory termination.

92. Defendant Manhattanville College retaliated against Plaintiff because Plaintiff objected to this discriminatory, retaliatory, and unlawful conduct.

93. Defendant Manhattanville College created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

94. The above are just some of the ways Defendant Manhattanville College regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

95. Defendant Manhattanville College treated Plaintiff this way solely due to Plaintiff's sex/gender and/or gender identity.

96. Defendant Manhattanville College acted intentionally and intended to harm Plaintiff.

97. Plaintiff felt betrayed because they expected Defendant Manhattanville College to protect them from discrimination.

98. Defendant Manhattanville College unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

99. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendant Manhattanville College.

100. Plaintiff was qualified for Plaintiff's position.

101. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

102. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

103. Defendant Manhattanville College acted maliciously, willfully, outrageously, and with full knowledge of the law.

104. As such, Plaintiff demands punitive damages.

## FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII

105. Plaintiff restates the foregoing allegations.

106. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

107. Defendant Manhattanville College violated the section(s) cited as set forth.

## SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

108. Plaintiff restates the foregoing allegations.

109. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

110. Defendant Manhattanville College violated the section(s) cited as set forth.

## JURY DEMAND

111. Plaintiff requests a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant Manhattanville College:

A. Declaring that Defendant Manhattanville College engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., in that Defendant Manhattanville College discriminated against Plaintiff based on Plaintiff's sex/gender and/or gender identity and retaliated against Plaintiff for engaging in protected activity and wrongfully terminated Plaintiff;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant Manhattanville College's unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant Manhattanville College's unlawful employment practices and conduct.

Dated: Rhinebeck, New York
January 5, 2022

*Nathaniel K Charny*
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff